UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LIANA E.[1],

                                  Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

_____

1:20-CV-1319-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 27)

Plaintiff Liana E. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 21) is granted, the Commissioner's motion (Dkt. No. 23) is denied, and the case is remanded to the Commissioner for further proceedings.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial.

## BACKGROUND[2]

On March 1, 2017, plaintiff filed for DIB and SSI, alleging disability beginning October 1, 2015. (*See* Tr. 15, 86-87, 158-70)[3] Plaintiff's disability benefits application was initially denied on May 8, 2017. (Tr. 90-105) Plaintiff timely filed a written request for a hearing on June 14, 2017. (Tr. 108-09) A hearing was held before Administrative Law Judge Mary Sparks ("the ALJ") on January 23, 2019. (Tr. 28-62) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Margaret E. Heck ("the VE"). (*Id.*) On May 1, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 12-26) The Appeals Council denied plaintiff's request for review of the ALJ's determination on July 16, 2020, and this action followed. (Tr. 1-6)

Born on January 11, 1984, plaintiff was 31 years old on the alleged onset date of October 1, 2015.  (Tr. 206) Plaintiff did not graduate high school, but did receive a GED in February 2002. (Tr. 33, 184) She has past work experience as a housekeeper, cashier, and fast-food worker. (Tr. 33-34)

## DISCUSSION

I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.
[3] References to "Tr." are to the administrative record in this case.

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     _Standards for Determining "Disability" Under the Act_

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." _Id._ §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." _Dumas v. Schweiker_, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (_quoting Miles v. Harris_, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." _Id._ §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." _Id._ Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

4

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the

fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.     *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the SSA through December 31, 2018. (Tr. 18) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim.  Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 1, 2015. (Tr. 18) At step two, the ALJ found that plaintiff has the severe impairments of complex regional pain syndrome (CRPS/RSD); non-ischemic cardiomyopathy; left ventricular ejection fraction 40%; large left ventricle with global hypokinesis; right ventricular ejection 41%; cardiomyopathy; large L5-S1 disc herniation; status post November 2015 left L5-S1 hemilaminotomy and micro-discectomy; bipolar 1 disorder; generalized anxiety disorder; PTSD; depressive disorder; recurrent disc herniation L5-S1; severe disc space narrowing; and myelopathy. (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments. (Tr. 18-19) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can no more than occasionally climb ladders, ropes, scaffolds, ramps, stairs, or balance, stoop, crouch, or crawl; would require the option to sit or stand at will provided they are not off task more than 10% of the work day and would be limited to performing low stress jobs defined as those having no more than occasional decision-making required and no more than occasional changes in work setting.

(Tr. 19-22) Proceeding to step four, the ALJ found that plaintiff was not capable of performing any past relevant work. (Tr. 22-23) At step five, the ALJ considered plaintiff's age, education and RFC and found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as document preparer, ticket checker, or addresser. (*Id.*) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from October 1, 2015 through the date of the decision. (Tr. 23)

## IV.   *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by failing to properly evaluate plaintiff's severe impairment of reflex sympathetic dystrophy syndrome ("RSDS") when formulating the RFC. (*See* Dkt. No. 21 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees with plaintiff and finds that this error requires remand.

Social Security Ruling ("SSR") 03-2p explains that Reflex Sympathetic Dystrophy Syndrome (RSDS), also known as Complex Regional Pain Syndrome (CRPS), is a "chronic pain syndrome most often resulting from trauma to a single extremity." *See* SSR 03-2p, 2003 SSR LEXIS 2 (S.S.A. Oct. 20, 2003). According to SSR 03-2p, a principal characteristic of RSDS is that the degree of pain reported is out of proportion to the

severity of the injury sustained by the individual. *Id.* Because RSDS often results in "intense pain" that is disproportionate to the originating injury and unsupported by objective medical evidence, "conflicting medical evidence in the medical record is not unusual." *Id.* Thus, SSR 03-2p instructs that when evaluating a disability claim based on RSDS, "[c]larification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources." *Id.* To that end, SSR 03-2p emphasizes that "[o]pinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CPRS on the individual's ability to function in a sustained manner in performing work activities, or in performing activities of daily living, are important in enabling adjudicators to draw conclusions about the severity of impairment(s) and the individual's RFC." *Id.*

Here, the ALJ found that plaintiff suffered from the severe impairment of RSDS. (Tr. 18) However, the ALJ never referred to SSR 03-2p in her analysis of plaintiff's RFC, nor did she indicate that she was aware of the Ruling. Indeed, there is no indication that the ALJ considered SSR 03-2p's emphasis on the importance of considering opinions from plaintiff's treating sources when evaluating the severity of her RSDS. This failure is especially problematic here, since plaintiff's descriptions of her symptoms, pain, and physical limitations were not fully supported by the objective medical evidence in the record. *See Cooley v. Colvin*, 12-CV-1284, 2013 U.S. Dist. LEXIS 200435 (N.D.N.Y. Oct. 15, 2013) (noting that with RSDS/CRPS "the lack of supporting diagnostic and clinical findings is to be expected and may not provide a sound basis for rejecting a complainant's complaints of severe pain.").

During the hearing, plaintiff testified that she is unable to work due to severe left ankle pain caused by RSDS. (Tr. 37) She explained that her RSDS was triggered by a bad fall or sprain that continued to worsen over time. (Tr. 38) She described the condition as shooting pain accompanied by numbness or tingling as well as redness and swelling if her ankle remains in a certain position for too long. (*Id.*) Plaintiff testified that she has difficulty ambulating and often experiences a "drop foot" which makes her feel like she is tripping over her own foot when walking. (Tr. 40) Medical treatment records confirm that plaintiff was diagnosed with RSDS of her left ankle on June 9, 2015. (Tr. 372) In March of 2017, plaintiff complained of bruising, swelling, and tenderness of the back of her left foot and intolerable pain in her lower back radiating through her left lower extremity, with numbness and tingling of her left foot. (Tr. 419, 574) Plaintiff treated with a pain management specialist in May and June of 2017 for lower back pain as well as pain from RSDS in her ankle. (Tr. 460-63, 466) In August of 2017, she complained of an increase in neuropathic issues in her extremities and reported difficulty with prolonged sitting, standing, and walking. (Tr. 457) On September 17, 2018, plaintiff visited the emergency room with complaints of progressively worsening left ankle pain and redness for the prior twenty-four hours. (Tr. 542) She described the pain as a severe burning pressure at her left ankle which becomes a "short-lived 10/10 stabbing pain" that radiates up her lower leg when she bears weight on it. (*Id.*) She attempted icing and elevating her leg without relief. (*Id.*) On February 12, 2019, plaintiff treated with Dr. Gregory D. Sambuchi, a neurologist, for intransient back and lower extremity pain. (Tr. 606) Dr. Sambuchi diagnosed plaintiff with "chronic regional pain syndrome (CRPS) type 1 of the left lower extremity manifest as neuropathic pain with allodynia, skin discoloration, sweating

abnormality and swelling." (Tr. 606) He further observed that "this is occurring in the aftermath of a L5-S1 disc herniation with radicular pain down the left lower extremity status post-surgical decompressive surgery without successful resolution of pain syndrome." (*Id.*)

In formulating the RFC, the ALJ acknowledged plaintiff's "history of RSDS involving the ankle" as well as "some evidence of lower extremity problems." (Tr. 20) The ALJ then found that while plaintiff was not disabled from all work, it was "reasonable to reduce [plaintiff's] standing and walking." (*Id.*) In concluding that plaintiff was still capable of performing sedentary work with some restrictions, the ALJ noted that treatment records from March 2017 described plaintiff's RSDS as stable. (Tr. 20, 344-45) The ALJ also noted that an examination of plaintiff on April 5, 2017 revealed "normal gait, no extremity edema, unrestricted weight bearing, and unremarkable musculoskeletal findings." (Tr. 20, 574) The ALJ also appeared to summarily dismiss plaintiff's complaints of severe pain by stating that they were not fully supported by the medical record. (Tr. 19) ("[T]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.").

However, as noted above, SSR 03-2p expressly recognizes that due to the nature of RSDS, the intensity, severity, and persistence of a plaintiff's symptoms may not be accurately or fully reflected in the medical record. The ALJ failed to recognize this fact. The ALJ also failed to recognize the importance of considering opinion evidence from a claimant's treating physicians when such conflicts arise in cases involving a RSDS diagnosis. Indeed, the record here lacked any opinion evidence from a treating physician. Despite this deficiency, and contrary to the recommendations set forth in SSR 03-2p, the

ALJ made no attempt to obtain information from plaintiff's treating doctors to further clarify the severity of plaintiff's RSDS and how it might specifically limit her physical ability to perform substantial gainful activity. *See Pensiero v. Saul*, 3:19-CV-00279, 2019 U.S. Dist. LEXIS 203743 (D. Conn. Nov. 25, 2019) (remand appropriate where "ALJ found that Plaintiff suffered from [RSDS] and that it was a severe impairment [but] did not cite SSR 03-02p...or give any indication that he was aware of the ruling or its requirements [and] there [were] no opinions from any of Plaintiff's treating physicians or specialists addressing Plaintiff's ability to function in a work setting."); *Verstreate v. Saul*, 1:18-CV-00308, 2020 WL 1242405, at *12 (W.D.N.Y. Mar. 16, 2020) (remanding to correct ALJ's legal error of failing to comply with SSR 03-2p); *Sandra v. Saul*, 3:19-CV-9423: 2021 U.S. Dist. LEXIS 59313 (D. Conn. Mar. 29, 2021) ("Absent any references to or meaningful discussion of plaintiff's CRPS and SSR 03-02p...the record is not clear that the ALJ properly considered the effects of all of plaintiff's impairments.").

Moreover, the ALJ placed substantial weight on (1) the consultative examiner's opinion that plaintiff had no limitation in her ability to sit and (2) the non-examining state agency medical consultant's opinion that plaintiff was "essentially restricted to sedentary work with postural limitations." (Tr. 21) Although this might be appropriate in a typical case, SSR 03-2p urges caution in cases involving RSDS. Indeed, SSR 03-2p recognizes that signs and symptoms of RSDS may not be "present continuously" or "may be present at one examination and not appear at another." *See* 2003 SSR LEXIS 2. Thus, "caution must be used when considering opinions based on single examinations." *Cooley*, 2013 U.S. Dist. LEXIS 200435. *See also See Engberg v. Astrue*, 10-cv-64, 2011 U.S. Dist. LEXIS 83545 (N.D. Fla. June 29, 2011) (noting that SSR 03-2p "elevates the opinions of

long term treating physicians-as opposed to those of a one-time consultative examiner-to a particularly high level of importance"). There is no indication that the ALJ was mindful of the need for such caution here. *See Bernstein v. Comm'r of SSA*, 3:09-CV-17, 2010 U.S. Dist. LEXIS 18836 (M.D. Fla. Feb. 3, 2010) ("[T]he mere mention of diagnosis and symptoms which may be associated with [RSDS] does not equate to an evaluation of the intensity, persistence, and limiting effects of plaintiff's [RSDS].").[4]

Thus, remand for reconsideration of the RFC in light of plaintiff's RSDS is warranted. The Commissioner is instructed to reevaluate plaintiff's RSDS in accordance with the specific directives of SSR 03-2p and, if appropriate, to re-contact plaintiff's treating physicians to provide specific opinions as to how plaintiff's RSDS impacts her ability to perform work activities.

Plaintiff next argues that the ALJ's finding that plaintiff would not be off-task more than 10% of the workday is not supported by substantial evidence. (*See* Dkt. No. 21 (Plaintiff's Memo. of Law)) The Court agrees and finds that remand is also appropriate because the off-task portion of the RFC was not based on substantial evidence.

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §404.1545(a)(1). Specific RFC assessments, like percentage of time spent off-task during

---

[4] In addition, the consultative examiner's opinion was rendered on April 26, 2017 and the state agency medical consultant's opinion was rendered on May 4, 2017. Thus, both opinions were issued before plaintiff's September 2018 visit to the emergency room for severe left ankle pain that would not resolve and plaintiff's treatment with a neurologist beginning in February 2019 for RSDS/CRPS. Because there is evidence that plaintiff's condition deteriorated over time, the opinion evidence relied on by the ALJ also appears to be stale. *Carney v. Berryhill*, 16-CV-269, 2017 U.S. Dist. LEXIS 72784 (W.D.N.Y. 2017) ([A] medical opinion may be stale if it does not account for the claimant's deteriorating condition."); *Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (E.D.N.Y. Aug. 22, 202) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of plaintiff's hearing date and "did not account for her deteriorating condition.").

a workday, must be based on evidence in the record, not on "the ALJ's own surmise." *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014) (summary order). Here, the RFC included a limitation that plaintiff must have the option to sit or stand at will "provided they are not off task more than 10% of the workday." (Tr. 19) Thus, the ALJ concluded that plaintiff's physical limitations may cause her to be off-task for, at most, 10% percent of the workday. The ALJ cites no evidence in the record, medical or otherwise, suggesting that plaintiff would be off-task for this specific period of time. In fact, there are no medical opinions, treatment records, or other evidence in the record indicating what amount of time, if any, plaintiff would be off-task over the course of a workday. Case law from this District reflects that if an ALJ believes that an off-task time limitation is necessary, she must refer to a medical opinion or other specific evidence in the record that supports such a limitation. *See Wouters v. Comm'r of Soc. Sec.*, 19-CV-610, 2020 U.S. Dist. LEXIS 80565 (W.D.N.Y. May 7, 2020) (finding that the ALJ's conclusion that the claimant would be off-task 5% of the time was not supported by substantial evidence because the ALJ pointed to no evidence indicating why plaintiff would be off-task for this specific percentage of time); *Austin v. Comm'r of Soc. Sec.*, 19-CV-638, 2020 U.S. Dist. LEXIS 172633 (W.D.N.Y. Sept. 21, 2020) (the RFC determination that plaintiff would be "off task up to three percent of the workday due to symptom exacerbations" was not supported by substantial evidence where "nowhere [in the record] is there an opinion or testimony providing that [plaintiff] would be off-task up to three percent of the workday due to her symptoms...[and] this number came solely from the ALJ."); *Elder v. Comm'r of Soc. Sec.*, 18-CV-1196, 2019 U.S. Dist. LEXIS 205159 (W.D.N.Y. Nov. 26, 2019) (remand required where nothing in the record supported the ALJ's specific mental RFC determination that

[claimant] would be off task for no more than "five minutes...per hour" and noting that "if the ALJ wishes to address the time that [plaintiff] can stay on task, she should recontact [plaintiff's] physicians to get their opinions on that issue.")

Here, the ALJ tied the off-task limitation or percentage to her assessment that plaintiff must be able to sit or stand at will. Plaintiff testified that she experiences frequent and severe back pain. (Tr. 40-41) She explained that she can walk for fifteen to twenty minutes before needing to take a break because of pain and cannot stand in one spot longer than five minutes before her back "locks up." (Tr. 42) Plaintiff also testified that she must constantly change positions or move around. (Tr. 42-43). Thus, by including a sit/stand option, the ALJ appears to have credited at least some of plaintiff's testimony as to her limitations in prolonged sitting, standing, and walking as well as her need to frequently change positions. However, none of the medical opinion evidence cited and discussed by the ALJ speaks to plaintiff's specific limitation for alternating between siting and standing. "So when the record provides no support for the specific amount of time that a claimant can sit or stand without relief, a specific finding toward that end is not supported by substantial evidence." *Heckman v. Commissioner*, 18-CV-6032, 2019 U.S. Dist. LEXIS 58447 (W.D.N.Y. Apr. 4, 2019). Thus, there is no medical evidence in the record here to support the ALJ's conclusions that plaintiff's need to sit or stand at will would result in no more than 10% of time off-task time during the workday. *See Cheek v. Comm'r of Soc. Sec.*, 18-CV-01455, 2020 U.S. Dist. LEXIS 74544 (W.D.N.Y. Apr. 28, 2020) ("If the ALJ believed that a sit/stand limitation was necessary given Plaintiff's physical impairments, he should have obtained medical opinion evidence supporting such

a limitation, particularly given Plaintiff's testimony that she is not able to sit for more than five minutes.").

Further, the ALJ's error in assessing plaintiff's off-task time was not harmless. The VE testified that with respect to the jobs of document preparer, ticket checker, and addresser, an employer can tolerate workers being off-task, at most, 10% to 15% of the time. (Tr. 58-60) The VE further explained that an employee who was off-task 15% or more of the time would be precluded from the specific types of sedentary jobs with postural limitations that the VE found to be otherwise suitable for plaintiff. (*Id.*) Thus, if plaintiff here were to be off-task even a little more than the 10% allowed by the ALJ, she may be disabled under the Act.  *See Elder*, 2019 U.S. Dist. LEXIS 205159, *15 ("At best, then, the ALJ's conclusion comes from whole cloth.  At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive.") In short, because the 10% off-task formulation is not supported by substantial evidence, and this finding was significant to the VE's conclusion that there were jobs which plaintiff could perform, remand is warranted. *See Cosnyka*, 576 F. App'x at 46 ("Because there is no substantial evidence for the ALJ's six-minute per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [the claimant] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits."); *Edward James P. v. Comm'r of Soc. Sec.*, 20-CV-00358, 2020 U.S. Dist. LEXIS 258533 (W.D.N.Y. Sept. 29, 2020) (remanding where VE testified that being off-task more than 15% of the time would be work preclusive and "nowhere did [the ALJ]

identify any medical opinion or other evidence in the record to support his findings that plaintiff would be off task less than 15% of the workday.").

On remand, the Commissioner should further develop the record to specifically address the sit/stand option as well as the amount of time that plaintiff can remain on task over the course of a workday.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 21), defendant's motion for judgment on the pleadings is denied (Dkt. No. 23), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated:       July 5, 2022
             Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

16